**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JACKIE ORVILLE PEARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-924-PRW |
| | ) | |
| KWTV CHANNEL 9, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are Defendants City of Del City, Del City Police Department, Loyd Berger, Michael Arterbury, Matthew Lisenbee, Kory Boatwright, Christopher Griggs, and Robert Colson's ("Del City Defendants") Motion to Dismiss (Dkt. 11); Defendant Judge Jason Glidewell's Motion to Dismiss (Dkt. 13); and Defendants Griffin Television OKC, LLC and Jennifer Pierce's ("Griffin Defendants") Motion to Dismiss (Dkt. 15). For the following reasons, the Court **GRANTS** the Motions to Dismiss.

***Background***

According to police reports, on March 19, 2025, Del City Police personnel responded to a report of an assault on D.N., an intellectually disabled woman.[1] The officers discovered the woman at a home in Del City and she was transported to St. Anthony's Hospital in downtown Oklahoma City.[2] A subsequent investigation revealed evidence that

[1] Police Report (Dkt. 1-11), at 11.

[2] *Id.* at 8, 11-13.

the woman had been abused while living in Plaintiff Jackie Pearson's home.[3] Plaintiff's daughter was believed to be the primary abuser.[4] Police learned that D.N. had suffered a number of serious injuries, including fractured bones, a brain hemorrhage, bruising, sepsis, pneumonia, renal failure, and rhabdomyolysis.[5]

At Plaintiff's residence, police reported discovering "blood on a pillow sitting on the sleeping cot" and "blood on the ceiling."[6] Blood was also observed on the kitchen floor and garage floor, and there was a "'C collar' near the sleeping cot with what appeared to be blood … on the area where a person's neck would be."[7] There was also a stack of papers next to the cot with punishment sentences handwritten on them in pencil.[8] The residence itself was "covered in filth" and filled with a "strong odor" of "ammonia and feces" from the rats and various animals found throughout the residence.[9]

When officers interviewed Plaintiff, he denied witnessing any physical abuse despite living alongside D.N. in the single-level, 756-square-foot home. But according to the police report, Plaintiff admitted to having observed his daughter and another male, named Shawn, with D.N. while she had a "C collar" around her neck.[10]

---

[3] *Id.* at 8, 12.

[4] *Id.*

[5] *Id.* at 9.

[6] *Id.* at 8.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 14.

In an affidavit to Oklahoma County District Court seeking to establish probable cause for Plaintiff's arrest for the alleged crime of being an accessory to a felony related to D.N.'s abuse, one officer attested that "it would be impossible for Pearson to have not seen the condition of [D.N.]" due to the fact that she was "held in the living room…where [he] walked every day."[11] Defendant Judge Jason Glidewell, an Oklahoma County District Judge, signed a warrant for Plaintiff's arrest on March 21, 2025.[12]

Several days later, Defendant Jennifer Pierce, a reporter for Defendant Griffin Television, d/b/a KWTV, published an article on the News 9 website entitled "Del City Police Rescue Intellectually Disabled Woman From Alleged Months-Long Torture And Abuse."[13] The article mentioned that an intellectually disabled woman was allegedly being tortured while living in Plaintiff's home, and stated that he had been charged with accessory to felony charges for not reporting the abuse.[14] About two weeks later, Pierce published another article, entitled "'I Can't Even Wrap My Head Around It:' Del City Police Officer Describes Abuse And Torture Case Involving Vulnerable Woman."[15] This article included statements from Del City Police Officer and Defendant Michael Arterbury and other information found in the police reports about the incident.[16]

---

[11] Griggs Aff. (Dkt. 1-6), at 3.

[12] OSCN Record (Dkt. 1-18), at 2.

[13] March 25, 2025 Article (Dkt. 1-2).

[14] *Id.*

[15] April 8, 2025 Article (Dkt. 1-3).

[16] *Id.*

Plaintiff filed the instant Complaint pro se, and it is difficult to ascertain from the Complaint exactly which claims Plaintiff asserts against which Defendants. It appears that Plaintiff asserts a broad set of constitutional and civil-rights claims against the Del City defendants, KWTV, reporter Jennifer Pierce, and Judge Jason Glidewell.

He alleges that Detectives Christopher Griggs and Kory Boatwright, Officer Matthew Lisenbee, Officer Robert Colson, the Del City Police Department, the City of Del City, and Judge Glidewell violated his Fourth Amendment rights by causing or participating in an allegedly unlawful search of his home, seizure and retention of his cellphone, and arrest or detention based on allegedly false or deficient probable-cause materials.

He claims Griggs and Boatwright violated his Fifth Amendment rights by coercing him during interrogation and pressuring him to support the police narrative, and violated his Sixth Amendment rights by denying him notice of the charges and an opportunity to confront his accuser.

Plaintiff further alleges that Boatwright and Glidewell violated the Eighth Amendment by causing or approving excessive bail, and that Lisenbee and Del City Police violated the Eighth Amendment or related due-process protections by ignoring his diabetic medical needs while in custody.

He also asserts First Amendment and Fourteenth Amendment claims against Del City police personnel and municipal defendants, alleging failure to accommodate his religious beliefs and dietary restrictions, unequal treatment, reputational harm, and deprivation of liberty and property without due process.

Against KWTV Channel 9 and Jennifer Pierce, Plaintiff brings state law defamation claims, alleging that they acted in concert with Del City Police by publishing false or misleading police-supplied statements linking him to abuse, torture, and failure-to-report allegations, thereby causing reputational injury and participating in the alleged civil-rights violations.

Against the City of Del City, Del City Police Department, Chief Loyd Berger, and Major Michael Arterbury, he asserts supervisory and municipal-liability theories, alleging failures to train, supervise, discipline, and correct unconstitutional police conduct.

Overall, Plaintiff brings these allegations primarily under 42 U.S.C. § 1983, with an added § 1985 conspiracy theory against the police, municipal, judicial, and media defendants, claiming they collectively deprived him of constitutional rights and spread a false narrative about his involvement in the underlying criminal investigation.

Plaintiff seeks compensatory and punitive damages and various costs.

All Defendants have moved for dismissal of Plaintiff's claims, some pursuant to Fed. R. Civ. P. 12(b)(5) and all pursuant to Fed. R. Civ. P. 12(b)(6).

The Court addresses Plaintiff's claims against the Del City Defendants first, then discusses his claims against Judge Glidewell, the Griffin Defendants, and his defamation claims, in that order.

## *Legal Standard*

### I. Rule 12(b)(5) Standard

A Rule 12(b)(5) motion challenges the plaintiff's mode or method of serving process on the objecting party.[17] In his letters, motions, and supporting briefs, a plaintiff need only make a prima facie showing that service was proper under Rule 4.[18] The plaintiff bears the burden of showing compliance with all statutory and due process requirements.[19]

A Rule 12(b)(5) motion to dismiss "differ[s] from the other motions permitted by Rule 12(b) somewhat in that [it] offer[s] the district court a course of action—quashing the process without dismissing the action—other than dismissing the case when the defendant's defense or objection is sustained."[20] "[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant" rather than dismiss the action.[21]

### II. Rule 12(b)(6) Standard

---

[17] *Craig v. City of Hobart*, No. CIV-09-53-C, 2010 WL 680857, at *1 (W.D. Okla. Feb. 24, 2010) (citation omitted).

[18] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008); *see also Honeycutt v. Hughs*, No. CIV-14-797-W, 2015 WL 2449424, at *2 n.7 (W.D. Okla. May 21, 2015) (noting the court can consider "documentary evidence" submitted with a Rule 12(b)(5) motion without converting the motion to one for summary judgment).

[19] *Craig*, 2010 WL 680857, at *1 (citing *Fisher*, 531 F. Supp. 2d at 1260).

[20] 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1354 (3d. ed. 2004).

[21] *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983).

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[22] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[23] Additionally, the Court must "draw all reasonable inferences in favor of the non-moving party[.]"[24] While factual allegations are taken as true, a court need not accept mere legal conclusions.[25] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim.[26] As relevant here, the Court may consider "not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference" if they are "central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[27]

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[28] Courts should not, however, "assume the role of advocate for the pro se litigant."[29] And the broad construction of a pro se plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts

---

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

[23] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

[24] *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019) (citation omitted).

[25] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012).

[26] *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

[27] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations and internal quotation marks omitted).

[28] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

[29] *Id.*

on which a recognized legal claim could be based."[30] Because a pro se plaintiff "requires no special legal training to recount the facts surrounding his alleged injury," his pro se status does not overcome the rule that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[31]

***Discussion***

## I. Plaintiff's Claims Against the Del City Defendants

### A. The Individual Del City Defendants

The Individual Del City Defendants seek dismissal of Plaintiff's claim against them pursuant to Rule 12(b)(5), arguing that Plaintiff never properly served them. Rule 4(e) of the Federal Rules of Civil Procedure outlines the proper means of service. It permits plaintiffs to effectuate service by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

---

[30] *Id.*

[31] *Id.* (citations omitted).

Oklahoma law for serving a summons generally mimics the federal rules, except that Oklahoma allows service to be made by mail.[32] Because service by mail is not among the methods in Rule 4(e)(2), Plaintiff's service is valid only if it complied with Oklahoma law, as incorporated by Rule 4(e)(1).

Under Oklahoma law, both the complaint and the summons must be sent by "certified mail, return receipt requested and delivery restricted to the addressee."[33] Though Oklahoma only requires substantial compliance with its rules of service,[34] the Oklahoma Supreme Court has emphasized that "service of process can only be effected when delivery is restricted to the addressee."[35] And "in determining the sufficiency of substituted service of process, three questions must be answered: '(1) Is there a statute authorizing the method of service employed?; (2) Have the requirements of the statute been observed?; (3) Have fundamental due process requirements been met?'"[36] If the answer is "no" to any of those questions, then service was improper.[37]

Here, the first question is answered in the affirmative because 12 O.S. § 2004(C) authorizes service by mail,[38] but Plaintiff fails at the next inquiry: whether the requirements

---

[32] 12 O.S. § 2004(C)(2)(b).

[33] *Id.*

[34] *Crenshaw v. Stitt*, No. CIV-23-247-J, 2024 WL 3490295, at *3 (W.D. Okla. June 20, 2024) (citing *Graff v. Kelly*, 814 P.2d 489, 495 (Okla. 1991)).

[35] *Woods v. Woods*, 830 P.2d 1372, 1374 (Okla. 1992).

[36] *Graff v. Kelly*, 814 P.2d 489, 493 (quoting *Steincamp v. Steincamp*, 593 P.2d 495, 498 (Okla. 1979)).

[37] *See id.* at 493-96.

[38] 12 O.S. § 2004(C)(2)(b).

of the statute have been met. The summonses for each of the Individual Del City Defendants state that they were served with process via certified mail to the Del City Police Department. The deliveries were signed by the Department's records clerk rather than the individual Defendants, indicating that mail was not restricted to the addressee.[39] Plaintiff does not maintain that Susan Cluck, a records clerk, was an agent of the Individual Del City Defendants, and the Individual Del City Defendants argue that they did not authorize anyone to receive service on their behalf. Defendants also maintain that a copy of the Complaint and the attached exhibits was not mailed with the summonses.[40] Plaintiff does not substantively dispute any of these issues in his Response (Dkt. 18).[41]

Because acceptance by an unauthorized clerk, with no restricted delivery, defeats the statute's core safeguard that the addressee personally receive process, that service does not substantially comply with Oklahoma law. The Individual Del City Defendants were thus never properly served.

Plaintiff's failure to properly serve process does not automatically warrant dismissal. Under Rule 4, if service does not occur within 90 days of filing the complaint, "the court…must dismiss the action without prejudice against that defendant or order that

---

[39] Executed Summonses (Dkt. 5).

[40] Mot. to Dismiss (Dkt. 11), at 12-14.

[41] Plaintiff appears to dispute some of these issues in other filings. Even if this Court were to consider those other filings, however, Plaintiff fails to meaningfully counter the documentary evidence (Dkt. 5) showing that the summonses were not delivered to or signed for by any of the Individual Defendants.

service be made within a specified time."[42] "But if the plaintiff shows good cause for the failure [to properly serve], the court must extend the time for service for an appropriate period."[43] The "good cause" provision "should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule."[44] And "inadvertence or negligence alone" is not good cause,[45] nor does "[m]istake" or "ignorance of the rules…usually…suffice." Nor can an absence of prejudice to the defendants, by itself, substitute for a showing of good cause."[46]

Although not binding, the Court finds the reasoning of its decision in *Cumby v. SSM Health*[47] to be persuasive here, as there is no material distinction to the facts of this case. As was the case there, Plaintiff here has not attempted to make proper service even after a motion to dismiss for lack of proper service, has not asked for more time to effect service, and has not attempted to demonstrate good cause for his failure to properly serve these Defendants. Thus, no mandatory extension of time is warranted.

Nor is a permissive extension of time. A permissive extension may be proper where a defendant is evading service or concealing a defect in attempted service (neither of which

---

[42] Fed. R. Civ. P. 4(m).

[43] *Id.*

[44] *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) (citation and internal quotation marks omitted).

[45] *In re Kirkland*, 86 F.3d 172, 176 (10th Cir. 1996).

[46] *Despain*, 13 F.3d at 1439 (citing *In re City of Philadelphia Litig.*, 123 F.R.D. 512, 514 (E.D. Pa. Dec. 28, 1988)).

[47] *Cumby v. SSM Health*, No. CIV-25-255-R, 2025 WL 2701508, at *4 (W.D. Okla. Sept. 22, 2025).

is claimed here), where "[t]he applicable statute of limitations would bar the refiled action," where "the plaintiff has tried, but failed, to effect service upon the United States," or where an extension is necessary "to protect a pro se plaintiff from consequences of confusion or delay attending the resolution of an in forma pauperis petition."[48]

The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is the same as that provided by state law for "[g]eneral personal injury actions,"[49] unless the claim arises under an Act of Congress enacted after December 1, 1990.[50] Both §§ 1983 and 1985 were enacted before 1990,[51] so Plaintiff's claims' limitations periods are governed by state law. Oklahoma has a two-year statute of limitations for personal injury actions.[52] Therefore, the limitations period for Plaintiff's claims is two years from the date of accrual, which was when Plaintiff knew or should have known of the injury underlying the action.[53]

Plaintiff alleges that the Individual Del City Defendants "worked in concert with each other and conspired to" violate his rights.[54] The earliest date on which any of Plaintiff's claims could have accrued was March 19, 2025, the date on which it appears that Plaintiff's

---

[48] *Espinoza v. United States*, 52 F.3d 838, 841-42, 842 n.8 (10th Cir. 1995) (citations and internal quotation marks omitted).

[49] *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Alexander v. Oklahoma*, 382 F.3d 1206, 1212, 1215 (10th Cir. 2004) (applying an Oklahoma two-year statute of limitations to a claim brought under § 1985).

[50] *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

[51] As explained later, 18 U.S.C. § 242 provides no private right of action, so the statutes relevant to this analysis are 42 U.S.C. §§ 1983 and 1985.

[52] 12 O.S. § 95(A)(3).

[53] *Alexander*, 382 F.3d at 1215 (10th Cir. 2004).

[54] Compl. (Dkt. 1), at 7.

residence was searched.[55] Thus, even assuming every claim accrued on that earliest date, the limitations period will not expire before March 19, 2027.

Dismissal therefore would not bar Plaintiff from refiling his §§ 1983 or 1985 claims. The remaining factors likewise don't apply: no Defendant is alleged to have evaded service or concealed a defect in it, the United States is not a party, and Plaintiff has not sought to proceed in forma pauperis. A permissive extension is therefore unwarranted. And although quashing service is ordinarily preferred, the 90-day period under Rule 4(m) expired on November 13, 2025, Plaintiff has made no effort to re-serve these Defendants despite notice of the defect, and dismissal without prejudice will not prejudice him. The claims against the Individual Del City Defendants are therefore dismissed without prejudice under Rules 12(b)(5) and 4(m).

**B. The Del City Police Department**

Plaintiff also asserts claims against the Del City Police Department. However, the Tenth Circuit has explained that police departments "are not suable entities under § 1983, because they lack legal identities apart from the municipality."[56] Plaintiff argues that the Del City Police Department must be a suable entity because it issued its own policy manual, which Plaintiff attached as an exhibit to his Response to the Del City Defendants' Motion to Dismiss.[57] But Plaintiff cites no authority establishing that the mere issuance of policy

---

[55] Griggs Aff. (Dkt. 1-7), at 2.

[56] *Ketchum v. Albuquerque Police Dep't*, No. 91-2200, 1992 WL 51481, at *2 (10th Cir. 1992) (unpublished). The Court cites unpublished decisions for their persuasive value only, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

[57] Policy Manual (Dkt. 18-8).

makes an entity suable under § 1983. Because leave to amend would be futile, the Court dismisses all claims against the Del City Police Department with prejudice.

### C. The City of Del City

Plaintiff also asserts claims against the City of Del City. For a municipality to be liable under § 1983, a plaintiff must allege that (1) there exists an official policy or custom of the municipality, which (2) caused the plaintiff's injuries, and (3) that the policy or custom was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.[58]

The Complaint states that "City of Del City…systematically failed to supervise, train, retain, discipline, [and] enforce published Del City Department Policy, April 1, 2024."[59] This *may* be referring to the Del City Police Department policy manual which is attached as an exhibit to Plaintiff's Response to the Del City Defendants' Motion to Dismiss (Dkt. 18-8), and which appears to state a copyright date of April 1, 2024. The Court considers this policy manual, which isn't part of the pleading, only to construe the pro se allegations liberally (and it doesn't change the result).

The Complaint also alleges two instances of "failures" by Del City to train or "supervise, employ, retain, and uphold state laws and Constitutional protections," and cites two cases in the Western District of Oklahoma in which the City of Del City was or is alleged to have committed civil rights violations.[60] Beyond this, however, Plaintiff makes

---

[58] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-71 (10th Cir. 2013).

[59] Compl. (Dkt. 1), at 6.

[60] *Id.* at 14.

no attempt to explain the policy or custom of City of Del City that he alleges exists, how the unproven civil rights violations in his and two other cases—one of which was settled[61] and one of which was ultimately dismissed[62]—amount to a policy or custom of the city, or how that policy or custom caused any of Plaintiff's injuries. Plaintiff simply has not alleged a *pattern* of similar prior violations. Plaintiff also does not assert any facts tending to show deliberate indifference to constitutional violations.

And even if the Del City Police Department policy manual attached to Plaintiff's Response (Dkt. 18-8) is a policy of the City of Del City, an alleged pattern of violations of a city's own policies does not equal a policy or custom maintained with deliberate indifference to *constitutional rights*. Violating a city's own policies is not itself a constitutional violation, and Plaintiff alleges no facts showing that any city policy or custom was the moving force behind a constitutional injury or was maintained with deliberate indifference.

Accordingly, Plaintiff's claims against the City of Del City are dismissed without prejudice.

## II. Plaintiff's Claims Against Judge Glidewell

Plaintiff's claims against Judge Glidewell, the state court judge who signed Plaintiff's arrest warrant, are barred by absolute immunity, which shields judges from liability for acts performed in their judicial capacity, unless those acts are performed "in

[61] *Colucci v. City of Del City Police Dep't*, No. 21-cv-363 (W.D. Okla. Feb. 24, 2022).

[62] *Dehut v. City of Del City*, No. 25-585 (W.D. Okla. Sept. 23, 2026).

the clear absence of all jurisdiction."[63] This doctrine is grounded in the principle "that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself."[64] To decide whether a judge acted in his or her judicial capacity, courts look to the act itself to see if it "is a function normally performed by a judge," and also to "the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."[65]

Plaintiff alleges that Judge Glidewell violated the Fourth Amendment by signing an unsupported warrant for Plaintiff's arrest, and the Eighth Amendment by setting or approving excessive bail. Both issuing an arrest warrant and setting bail are functions normally performed by a judge, and nothing suggests Plaintiff dealt with Judge Glidewell other than in his judicial capacity. Nor has Plaintiff alleged facts suggesting Judge Glidewell acted in the clear absence of all jurisdiction. Judge Glidewell is therefore entitled to absolute judicial immunity, and all claims against him are dismissed with prejudice.

## III. Plaintiff's Claims Against the Griffin Defendants

### A. The § 1983 Claims

Plaintiff's claims against the Griffin Defendants under 42 U.S.C. § 1983 must also fail. That code section "provides a federal cause of action against any person who, acting

---

[63] *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citation and internal quotation marks omitted).

[64] *Id.* at 355 (citation and internal quotation marks omitted).

[65] *Id.* at 362.

under color of state law, deprives another of his federal rights."[66] Because a "person" under § 1983 must be "acting under color of state law," it necessarily "excludes from its reach merely private conduct,"[67] and the only proper defendants in a § 1983 action are those who "represent [the State] in some capacity."[68] Thus, Plaintiff must show that he was deprived of a federal right through conduct that is "fairly attributable to the State."[69]

The Tenth Circuit has applied four different tests to determine whether a private individual may be subject to liability under § 1983: the nexus test, the symbiotic relationship test, the joint action test, and the public function test.[70] The nexus test requires a "sufficiently close nexus between the government and the challenged conduct" and, in most cases, renders a State liable for a private individual's conduct "only when [the State] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[71] The symbiotic relationship test asks whether the State "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity."[72] The joint action test requires courts to "examine whether state

---

[66] *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

[67] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).

[68] *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (citation and internal quotation marks omitted).

[69] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[70] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

[71] *Id.* at 1448 (citations and internal quotation marks omitted).

[72] *Id.* at 1451 (citation and internal quotation marks omitted).

officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."[73] The public function test asks whether the challenged action is a function "traditionally exclusively reserved to the State."[74]

Construed liberally, Plaintiff's allegation that the Griffin Defendants acted as "agent[s]" of the police is best analyzed under the joint-action test, which is satisfied when the private party is a "willful participant in joint action with the State or its agents."[75] "[O]ne way to prove willful joint action is to demonstrate that the public and private actors engaged in a conspiracy."[76] The plaintiff must show that "both [the] public and private actors share[d] a common, unconstitutional goal" and plead "specific[]…facts tending to show agreement and concerted action."[77]

Here, Plaintiff asserts that the Griffin Defendants may be held liable for making allegedly false statements in their news reporting about him, and that the Griffin Defendants conspired with the Del City Defendants to deprive him of his federal rights.[78] Regardless of the truth or falsity of the Griffin Defendants' reporting, however, Plaintiff has not pled specific facts tending to show agreement and concerted action among the defendants. Plaintiff's allegations that the Griffin Defendants relied on Del City police

---

[73] *Id.* at 1453.

[74] *Id.* at 1456 (citation and internal quotation marks omitted).

[75] *Id.* at 1453 (citation and internal quotation marks omitted).

[76] *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000).

[77] *Id.* (citations and internal quotation marks omitted).

[78] Compl. (Dkt. 1), at 6-7.

affidavits and Del City police officers' statements in their reporting, but "fail[ed] to fact check the information," are insufficient to plausibly allege a conspiracy.[79] The Tenth Circuit has held that "a reporter does not become a state actor…simply because she has received and published information from a governmental official."[80] And this is true regardless of whether the information is true or false. The Court therefore holds that the Griffin Defendants are not subject to liability under § 1983.

**B. The § 1985 Claims**

Section 1985 creates a private cause of action for claims arising out of "a conspiracy of two or more persons for the purpose of depriving…another of equal protection of the laws or equal privileges and immunities under the laws."[81] Unlike § 1983, this section does not require that a defendant have acted under color of state law to be sued.[82] For the same reasons described above in Part III.A., however, the Court finds that Plaintiff has failed to plausibly allege a conspiracy under § 1985, as Plaintiff has failed to allege "specific facts showing an agreement and concerted action amongst the defendants,"[83] much less one based on the requisite "class-based, invidiously discriminatory animus."[84] Plaintiff has not plausibly alleged a § 1985 conspiracy involving any Defendant.

---

[79] Compl. (Dkt. 1), at 12.

[80] *Anderson v. Suiters*, 499 F.3d 1228, 1233 (10th Cir. 2007).

[81] *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1447 (10th Cir. 1990).

[82] *Id.*

[83] *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010), *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021) (citation and internal quotation marks omitted).

[84] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

### C. The § 242 Claims

Plaintiff also asserts that various Defendants violated his rights under 18 U.S.C. § 242, which is a criminal statute penalizing the willful deprivation of another's federal rights. Because that statute does not provide private plaintiffs with a right of action,[85] however, Plaintiff cannot rely on it either to assert his claims. Accordingly, Plaintiff's § 242 claims are dismissed with prejudice as to all Defendants.

## IV. The State Law Defamation Claims

Plaintiff asserts state law defamation claims against several of the Defendants, relying on the Court's supplemental jurisdiction. The Tenth Circuit has held, however, that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[86] Without deciding the issue of whether supplemental jurisdiction exists to hear Plaintiff's defamation claims, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise any supplemental jurisdiction over those state law claims. Nor does it appear that diversity jurisdiction was alleged or exists. Accordingly, Plaintiff's defamation claims are dismissed without prejudice.

## ***Conclusion***

---

[85] *See, e.g., Tucker v. U.S. Ct. of Appeals for the Tenth Circuit*, 815 F.App'x. 292, 294 (10th Cir. 2020); *Henry v. Albuquerque Police Dep't*, 49 F.App'x. 272, 273 (10th Cir. 2002).

[86] *Smith v. City of Enid By and Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

For these reasons, the Court **GRANTS** the Del City Defendants' Motion to Dismiss (Dkt. 11), Judge Glidewell's Motion to Dismiss (Dkt. 13), and the Griffin Defendants' Motion to Dismiss (Dkt. 15), as follows:

1. All claims against Defendants Berger, Arterbury, Lisenbee, Boatwright, Griggs, and Colson are **DISMISSED WITHOUT PREJUDICE** under Rules 12(b)(5) and 4(m) for insufficient service of process.[87]

2. All claims against the Del City Police Department are **DISMISSED WITH PREJUDICE**.

3. Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 against the City of Del City are **DISMISSED WITHOUT PREJUDICE**.

4. All claims against Judge Jason Glidewell are **DISMISSED WITH PREJUDICE**.

5. Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 against Griffin Television OKC, LLC and Jennifer Pierce are **DISMISSED WITHOUT PREJUDICE**.

6. Plaintiff's claims under 18 U.S.C. § 242 are **DISMISSED WITH PREJUDICE** as to all Defendants.

7. The Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), and Plaintiff's state-law defamation claims are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff may file an amended complaint as to his claims under 42 U.S.C. §§ 1983 and 1985 against the City of Del City and the Griffin Defendants within 21 days of this Order. If Plaintiff does not timely file an amended complaint, the Court will enter judgment without further notice.

---

[87] To the extent the Del City Defendants request attorney's fees, that request is denied without prejudice to a properly supported motion under Fed. R. Civ. P. 54(d) and LCvR54.2.

**IT IS SO ORDERED** this 30th day of September 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE